UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SHADOW OAKS, LLP,                                          CASE NO.:
A Florida Limited Liability Partnership,

     Plaintiff,

vs.

CITY OF OCALA,
A Municipal Corporation, and
JENNIFER L. BULLER, individually and
In her official capacity as an employee of the
CITY OF OCALA,

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, SHADOW OAKS, LLP (hereinafter "SHADOW OAKS"), by and through

its undersigned counsel, sues the Defendants, CITY OF OCALA (hereinafter "OCALA") and

JENNIFER L. BULLER (hereinafter "BULLER"), and alleges as follows:

This is an action by SHADOW OAKS pursuant to 42 U.S.C. §1983, to recover damages

from the Defendants' selective enforcement of Ocala's City Codes §82-151 and §122-51, and to

enjoin Defendants from their selective enforcement.

## JURISDICTION AND VENUE

1.     This is an action for damages in excess of $30,000.00 excluding costs and

interest, and the conduct giving rise to the Counts set forth herein occurred in Ocala, Marion

County, Florida.

1

2.     Venue is proper in this Court because the wrongful conduct alleged occurred in Ocala, Marion County, Florida.

## THE PARTIES

3.     SHADOW OAKS is a Florida Limited Liability Partnership that owns certain mobile home parks including a property located at 3120 SE 10th Avenue, Ocala, Marion County, Florida.

4.     The Defendant CITY OF OCALA is a Florida Municipal Corporation with its principal place of business in Ocala, Marion County, Florida.

5.     Upon information and belief, JENNIPHER L. BULLER is now, and at all times material hereto, an individual who is an employee of the CITY OF OCALA in the capacity of a Code Enforcement Officer, working in the City's Building Department.  Upon information and belief, JENNIPHER L. BULLER had final decision making authority which caused the alleged violation of SHADOW OAKS' civil rights as more particularly described herein.

## FACTS COMMON TO ALL COUNTS

6.     On or about March 20, 2019, BULLER, in response to a complaint from a non-paying pre-eviction tenant, conducted an inspection at the above referenced address.

7.     It has been SHADOW OAKS experience previously that when a mobile home park owner such as SHADOW OAKS threatens to take an eviction action against a tenant for non-payment, that tenants complain to Code Enforcement so as to buy time before an eviction action is filed.  This is what happened on March 20, 2019 at Unit 4 of the SHADOW OAKS Mobile Home Park.

8.      Following her inspection, Officer BULLER completed an "Inspection Checklist," a copy of which is attached hereto as Exhibit "A", whereby she noted several code violations that needed to be brought into compliance.

9.      The list had a completion date of May 9, 2019.  However, SHADOW OAKS had no access to the subject property for over five weeks of the initial seven-week time limit due to an aggressive and combative tenant who in the end had to be forcibly removed by Sheriff's deputies upon the completion of their eviction.

10.     Once SHADOW OAKS received possession of the premises, it immediately began to correct the issues on the Inspection Checklist, which included: broken outlet covers, smashed interior doors, holes punched in the drywall, missing (stolen) A/C and heaters, replacing all the carpets and laminate floors and removing the remains of a large tree next to the home that had been severely damaged in a storm.  Photographs of the stump that was cut are attached hereto as Exhibit "B".

11.     During this same time period, SHADOW OAKS' on-site manager reached out to Officer BULLER multiple times to try to get clarification on a few of the items listed on the "Inspection Checklist."  She was repeatedly met with aggressive and unprofessional responses, including profanity and having the calls abruptly cut off by Officer BULLER.

12.     Meanwhile SHADOW OAKS rushed to finish a months worth of work within the two week period, but as the deadline of May 9, 2019 approached it was clear SHADOW OAKS was not going to have all of the work completed in time.

13.     As a result, SHADOW OAKS reached out to Officer BULLER to request another week to finish the last few items, but was denied the requested extension by Officer BULLER. Instead, SHADOW OAKS was told that an inspection would take place on May 8, 2019.

3

14.     On May 8, 2019, Nathan Whittaker, the principal officer of SHADOW OAKS met Officer BULLER at the property to survey the progress in cleaning up the issues that had been identified on March 20, 2019, Inspection Report.  As Whittaker and BULLER walked through the home, Officer BULLER informed SHADOW OAKS that she was pleased with the progress but pointed out a few items that still needed to be completed.

15.     According to Officer BULLER, the items that needed to be completed were as follows:

    a.    install new hardware in bedroom door because the door did not close properly.
    b.    fix small hole in drywall that needed patching.
    c.    obtain a repair permit for the roof.
    d.    finish removing the tree debris near the property and clear it away.

16.     Notably, as of the May 8, 2019, Officer BULLER never made mention of the height of a wooden tree stump that had been left nearby following the removal of a tree.

17.     When Officer BULLER informed Whittaker that SHADOW OAKS needed to obtain a repair permit for the roof, Whittaker politely disputed her assertion because during the course of contacting numerous roofers to complete the repair they all argued that a permit was not required for an area under 100 square feet and as such they didn't need one to complete the repair.  Whittaker even called the Marion County Building Department to confirm his suspicions and was told that no building permit for the roof repair was necessary (again the under 100 square feet was mentioned).

18.     When SHADOW OAKS continued to assure Officer BULLER that according to the City's own Building Department, the park did not need a permit for the roof repair, she angrily informed SHADOW OAKS that no extension would be granted and that it needed to appear at a Code Enforcement hearing on May 16, 2019.

4

19.     SHADOW OAKS attended the May 16, 2019 hearing before the Municipal Code Enforcement Board. At the conclusion of the hearing, a Final Administrative Order was issued. A copy of the Administrative Order is attached hereto as Exhibit "C".

20.     The Order required SHADOW OAKS to comply with its requirements no later than Thursday, June 6, 2019, after which time there would be a fine of $250.00 per day until the items were abated. The Order was recorded in the Public Records of Marion County, Florida.

21.     On June 6, 2019, all of the required work referenced in the Administrative Order (Exhibit "C") had been completed and the park had even obtained a permit for the roof repair even though the licensed roofer who pulled the permit and completed the work maintained there was never any need for it.

22.     As of June 6, 2019, the tree debris had been removed and the stump was still in the condition it was in on May 8, 2019.

23.     At 9:01 a.m. on June 7, 2019, Officer BULLER called Heather Stimpson and told her that SHADOW OAKS was still out of compliance because the stump height was greater than 12 inches.  Prior to that phone call, no one at the CITY OF OCALA, including Officer BULLER had ever told SHADOW OAKS that the stump needed to be shorter than 12 inches.

24.     Notably, prior to June 7, 2019, Officer BULLER had been to the SHADOW OAKS location investigating other potential enforcement cases and had stood closer than 100 feet from the stump in question but never said anything to SHADOW OAKS about it being out of compliance.

25.     SHADOW OAKS also checked the infraction documentation it had previously received from Officer BULLER to see if it contained a 12 inch stump height requirement that was missed.  It did not.

5

26.     SHADOW OAKS believes, based upon Officer BULLER's tone during the June 7, 2019 discussion that she was retaliating against SHADOW OAKS for questioning her roof permit requirement and involving her supervisor to try to resolve the situation.

27.     By withholding the small but crucial piece of information from SHADOW OAKS she was able to find the park "out of compliance" with the administrative order on June 7, 2019.

28.     Notably, BULLER came out to inspect the tree stump issue (stump cut below 12 inches) the day after the deadline so she could charge SHADOW OAKS with violating the administrative order for an item (the stump) that BULLER knew SHADOW OAKS was unaware was out of compliance.

29.     In spite of BULLER's unreasonable actions, SHADOW OAKS contacted a tree professional to come to the property immediately and cut the stump lower.  The tree care contractor arrived on June 7, 2019 at approximately 2:00 p.m. but could not finish the work that day because his chainsaw broke.

30.     At 2:03 p.m. on June 7, 2019, SHADOW OAKS employee Heather Stimpson called Officer BULLER and left a message informing her that the stump was partially cut but that the tree expert would need come back to finish cutting down the stump because his chainsaw had broken.  Stimpson left several other messages for Officer BULLER which were never returned.

31.     Ultimately, SHADOW OAKS' tree contractor completed a full cut of the stump on June 10, 2019, whereupon SHADOW OAKS again called Officer BULLER to inform her that the stump was ready for inspection and that SHADOW OAKS was in "full compliance."

32.     In spite of SHADOW OAKS' phone calls and messages, Officer BULLER ignored them and never came back to reinspect the stump.  Further, she did not close the case unbeknownst to SHADOW OAKS.

33.     SHADOW OAKS maintains that BULLER and the CITY OF OCALA selectively enforced Ordinance Numbers §82-151 and §122-51 against it, as it is believed that the majority of cases in which Code Enforcement Officers are not questioned (SHADOW OAKS questioned BULLER's requirement that a roof permit be obtained) are closed out promptly after the CITY is notified of Respondents being in compliance.

34.     On September 10, 2019, SHADOW OAKS discovered for the first time that the case BULLER started had never been closed and the property had accrued daily fines totaling $23,500.00.

35.     As a result of Officer BULLER and the CITY OF OCALA's actions, SHADOW OAKS was forced to pay the money to clear up the lien on the property and not pursue its appeal rights so that it could close a large commercial transaction involving its property which had been in the works for six months and which was scheduled for closing on or about September 19, 2019.

36.     In addition to being forced to pay the large fine, SHADOW OAKS was also placed on "repeat offender" status.  This means that if a tenant decides to call Code Enforcement while being evicted, they can deny entry to SHADOW OAKS until the Sheriff removes them post eviction and SHADOW OAKS incurs unavoidable daily fines in the amount of $500.00 per day from the day the tenant calls Code Enforcement.

37.     SHADOW OAKS cannot evict its tenants without incurring significant fines as a result of its "repeat offender" status and has lost significant rental fees as a result of what has happened.  SHADOW OAKS damages exceed $150,000.00

38.     The CITY OF OCALA Building Department has also now instituted an inspection requirement for every home at SHADOW OAKS when a new tenant moves in.  This means that the new tenant cannot turn the power on in their name with the CITY OF OCALA until the inspection takes place.

39.     Other similarly situated mobile home parks nearby such as the "Cherry Hill Mobile Home Park" and the "Nautilus Mobile Home Park" are not subject to the same inspection requirement as SHADOW OAKS.   Again, the CITY OF OCALA's disparate treatment of SHADOW OAKS in this regard is further evidence that the CITY OF OCALA has engaged in unlawful "selective enforcement" practices against SHADOW OAKS and not other similarly situated mobile home parks.

## COUNT I – SECTION 1983 SELECTIVE ENFORCEMENT CLAIM AGAINST CITY OF OCALA

40.     SHADOW OAKS realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 39 herein.

41.     This Count is brought pursuant to 42 U.S.C. §1983 for the City's violation of Plaintiff's right to equal protection under the Fourteenth Amendment of the United State Constitution.

42.     JENNIPHER BULLER acted pursuant to custom or policy of the City to enforce its codes against SHADOW OAKS to the exclusion of others similarly situated in violation of the equal protection clause under the Fourteenth Amendment of the United States Constitution.

43.     The Defendants' actions in selectively enforcing the code on SHADOW OAKS was invidious or in bad faith as numerous other similarly situated mobile home parks who did not question the roof repair permit requirement, upon notifying the City that they were in compliance with certain inspection issues did not have their cases remain open so as to cause them to incur significant and continuing fines like those levied against SHADOW OAKS as referenced herein.

44.     Defendants' actions were also invidious and in bad faith because they have continued to require SHADOW OAKS' tenants, prior to moving into their units at SHADOW OAKS, to undergo inspection when other similarly situated mobile home parks such Cherry Hill Mobile Home Park and Nautilus Mobile Home Park located nearby have not been required to undergo these same inspections.

45.     As a direct and proximate result of Defendants' selective code enforcement, SHADOW OAKS has suffered damages in that it has lost leases, sustained exorbitant fines, and suffered other damages as described herein.

46.     SHADOW OAKS has had to retain the undersigned counsel to prosecute this action and is entitled to reasonable attorney's fees pursuant to 42 U.S.C. §1988(b).

WHEREFORE, the Plaintiff, SHADOW OAKS, demands judgment against Defendants, JENNIPHER BULLER and CITY OF OCALA for damages, costs of this action and reasonable attorney's fees, and any such further relief as this Court deems necessary and proper.

## COUNT II - SECTION 1983 SELECTIVE ENFORCEMENT CLAIM AGAINST OFFICER JENNIFER L. BULLER

47.     SHADOW OAKS realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 46 herein.

48.     This Count is brought pursuant to 42 U.S.C. §1983 for Defendant, JENNIPHER BULLER's violation of Plaintiff's right to equal protection under the Fourteenth Amendment of the United States Constitution.

49.     BULLER acted under color of law as Code Enforcement Inspection Officer for the CITY OF OCALA and enforced the Codes against SHADOW OAKS to the exclusion of others similarly situated as more particularly described herein in violation of the equal protection clause under the Fourteenth Amendment of the United States Constitution.

50.     BULLER's actions in selectively enforcing the Code on SHADOW OAKS was invidious and in bad faith as more particularly described in Count I.

51.     As a direct and proximate result of BULLER's selective code enforcement, SHADOW OAKS has suffered damages in that it has lost leases, sustained exorbitant fines, and suffered other damages as described herein.

52.     SHADOW OAKS has had to retain the undersigned counsel to prosecute this action and is entitled to reasonable attorney's fees pursuant to 42 U.S.C. §1988(b).

WHEREFORE, the Plaintiff, SHADOW OAKS, demands judgment against Defendant, JENNIPHER BULLER for damages, costs of this action and reasonable attorney's fees, and any such further relief as this Court deems necessary and proper.

53.     SHADOW OAKS endorses upon this Complaint its demand for a trial by jury of all issues so triable.

DATED this 5th day of August, 2021.

BLANCHARD, MERRIAM,
ADEL, KIRKLAND & GREEN, P.A.

By: _____
EDWIN A. GREEN, III, ESQUIRE

Florida Bar No. 0606111
P.O. Box 1869
Ocala, Florida 34478
Telephone: (352) 732-7218
Attorney for Plaintiff
tgreen@bmaklaw.com
lcaldwell@bmaklaw.com